# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

JOSHUA SIMPSON,

    Plaintiff,

v.                                                      Case No. 18-13156

CITY OF DEARBORN and
OFFICER VINCENT BELLOLI,

    Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Joshua Simpson sues Defendants City of Dearborn and Officer Vincent Belloli for an incident in which Simpson's arm was run over by a police vehicle as Simpson was trying to evade capture. Simpson alleged that Belloli used excessive force in violation of Simpson's constitutional rights under 42 U.S.C. § 1983. (ECF No. 1, PageID.12.) Simpson also included negligence claims under state law, Mich. Comp. Laws § 691.1407(2)(c) and § 691.1405. (*Id.*, PageID.5, 9.)

Defendants now move for summary judgment. (ECF No. 20.) Simpson filed a response and Defendants have replied. (ECF Nos. 25, 28.) For the following reasons, Defendants' motion as to Simpson's excessive force claim will be granted. The court will decline to exercise further jurisdiction as to Simpson's remaining state claims and they will be dismissed without prejudice.

# I. BACKGROUND

On the afternoon of October 26, 2017, Simpson and his girlfriend, Zaria Martin, were involved in a violent disagreement. Fighting between Simpson and Martin began as Martin drove Simpson through a McDonald's restaurant parking lot. (ECF No. 25-2, PageID.521.) Martin turned out of the McDonald's onto Michigan Avenue, a major road in Dearborn, Michigan. (ECF No. 20-4, PageID.176; ECF No. 20-5, PageID.188.) Once on the road, Simpson grabbed the steering wheel and turned it erratically, causing the car to swerve. (ECF No. 20-4, PageID.177-78; ECF No. 25-2, PageID.522-23.) Because the confrontation had escalated, Martin then turned into a gas station. (ECF No. 20-2, PageID.168; ECF No. 20-2; ECF No. 25-2, PageID.526.)

A security camera at the gas station depicted the unfolding events. (ECF No. 20-2). Martin pulled her vehicle into a parking spot. At the same time, another vehicle, driven by Martin's friend, pulled next to it. (*Id.*, 00:00-00:11; ECF No. 25-2, PageID.528.) Simpson exited the passenger seat, went around Martin's vehicle, and approached the driver's side window. (ECF No. 20-2, 00:22-00:28.) He then punched Martin several times through an open window. (*Id.*, 00:28-00:30.) When Martin frantically attempted to escape, diving into her friend's car, Simpson lunged into the car after her. (*Id.*, 00:35-00:46.) Simpson then continued to hit Martin and to pull her hair. (ECF No. 25-2, PageID.529-30.) Simpson eventually got out of the friend's vehicle and went back to Martin's vehicle. Simpson took out items from the vehicle and began throwing them onto the ground. (ECF No. 20-2, 00:56-01:00.)

With all this turmoil, spectators began to approach. (*Id.*, 01:45-02:00; ECF No. 20-2, PageID.160.) Simpson walked toward one of the spectators and attempted to

initiate a fight. (ECF No. 20-2, 01:50-01:57; ECF No. 25-2, PageID.536-37, 539.) In the process, the police were called, reporting a man punching a woman. (ECF No. 20-2, PageID.160, 163, 167.) However, Simpson walked away before the police arrived on the scene.

      Police soon identified Simpson walking on the sidewalk along Michigan Avenue, moving away from where the initial events occurred. (ECF No. 20-2, PageID.164; ECF No. 25-2, PageID.541.) The officer who identified Simpson activated his vehicle's emergency lights and ordered Simpson to stop, using the vehicle's loud speakers. (ECF No. 20-2, PageID.164.) In response, Simpson began to run and flee the police. (*Id.*; ECF No. 25-2, PageID.541.) He cut across Michigan Avenue, disrupting traffic and risking accidents, and ran to a gas station. (ECF No. 20-2, PageID.164; ECF No. 20-5, PageID.188; ECF No. 25-2, PageID.545.) At the gas station, Simpson ran between cars and pumps. (ECF No. 20-2, PageID.163; ECF No. 20-5, PageID.189; ECF No. 25-2, PageID.545.) Now being chased by several police officers and vehicles with their lights activated, Simpson shifted his direction several times, running onto Michigan Avenue again and then back into a parking lot. (ECF No. 20-2, PageID.164-65, 167; ECF No. 25-2, PageID.545-46.)

      As Simpson ran into the parking lot, Defendant Officer Belloli was maneuvering to cut Simpson off and block his means of escape. (ECF No. 20-2, PageID.167; ECF No. 20-5, PageID.182.) Belloli had been following Simpson in a police cruiser and decided to drive ahead of him. (ECF No. 20-2, PageID.167; ECF No. 20-5, PageID.182.) Another police officer, Officer Fox, had exited his vehicle and was chasing Simpson on foot. (ECF No. 20-2, PageID.163; ECF No. 25-2, PageID.546.) Bodycam

footage shows Fox yelling at Simpson and ordering him to stop running and get on the ground. (ECF No. 20-6, XV Fox, 14:21:33-14:21:38.)

Fox's bodycam then displays the event that gave rise to this lawsuit. The video shows Belloli driving his police vehicle past Simpson, and at the same time Simpson falling to the ground, a portion of Simpson's body falling into the path of Belloli's right front wheel, and the wheel running over Simpson's left arm and part of his left leg. (*Id.*, 14:21:38-14:21:40.) When Simpson fell, he was running in his socks and fell backwards. (*Id.*; ECF No. 25-2, PageID.555-56.) According to observations of Fox, Simpson slipped when he attempted to change direction and lost traction on the parking lot pavement. (ECF No. 20-2, PageID.163.) As a result, Simpson suffered serious injury to his arm, resulting in surgery. (ECF No. 25-2, PageID.596.)

Simpson was charged with several crimes for his actions that day. (ECF No. 20-4, PageID.175.) Following his plea admitting guilt, Simpson filed a no-fault insurance application to the City of Dearborn. (ECF No. 20-10.) In it, Simpson asserted that he was "run over by a police vehicle after [he] slipped and fell while running from the police." (*Id.*, PageID.225.)

## II. STANDARD

To prevail on a motion for summary judgment, a movant must show "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). First, the moving party bears the initial burden of presenting evidence that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no requirement that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.*

(emphasis removed); *see also Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995).

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (emphasis removed) (quoting Fed. R. Civ. P. 56(e)). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility' of a factual dispute." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). For a court to deny summary judgment, "the evidence [must be] such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015).

In cases where the events at issue are depicted in a recorded video tape, the court need not accept the allegations of a party that are "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Instead, "the court must view the facts 'in the light depicted by the videotape.'" *Pennington v. Terry*, 644 Fed. App'x 533, 538 (6th Cir. 2016) (quoting *Scott*, 550 U.S. at 381). "[A]ccounts seeking to contradict an unambiguous video recording do not create a triable issue." *Shreve v. Franklin County, Ohio*, 743 F.3d 126, 132-33 (6th Cir. 2014) (citing *Scott*, 550 U.S. at 380-81).

## III. DISCUSSION

Defendants seek summary judgment as to all of Simpson's claims. From the video and other evidence presented to the court, there is not a genuine issue of fact as to whether Simpson was intentionally seized by means of a collision with a police vehicle. Fed. R. Civ. P. 56(a). Thus, Simpson's federal claim against Belloli for excessive force will be dismissed. The only counts remaining are state negligence claims. The court will exercise its discretion and dismiss those claims without prejudice. 28 U.S.C. § 1367(c)(3).

### A. Federal Claim

Individuals may use § 1983 to sue "law enforcement officers that have used excessive force in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen . . . under the Fourth Amendment." *Schreiber v. Moe*, 596 F.3d 323, 331-32 (6th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). A valid claim requires both a "seizure" as recognized under the Fourth Amendment and the use of "unreasonable" force. *Id.*; *Scott v. Clay County, Tenn.*, 205 F.3d 867, 876 (6th Cir. 2000). Simpson fails to prove the "seizure" requirement.

For a law enforcement action to constitute a "seizure," it must be done intentionally. "A violation of the Fourth Amendment requires the 'intentional acquisition of physical control' of a person by a state official." *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989)). It cannot be "merely the consequence of 'an unknowing act.'" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Brower*, 489 U.S. at 596). "[I]n other words . . . a Fourth Amendment seizure does not occur whenever there is a governmentally

6

caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*."[1] *Brower*, 489 U.S. at 596-97.

Simpson contends that Belloli intentionally ran over Simpson's arm in order to effect a "seizure" and immobilize him. Uncontested video evidence contradicts Simpson's claim. Instead, the evidence presented unambiguously indicates that Belloli was attempting to block Simpson's route of escape and *accidentally* ran over Simpson's arm.

The evidence shows Simpson was running from the police in a highly erratic manner. He switched direction several times, running very fast. (ECF No. 20-2, PageID.163-65, 167; ECF No. 20-5, PageID.188-89; ECF No. 25-2, PageID.545-46.) Simpson was in socks and had little to no traction on the parking lot asphalt pavement. (ECF No. 20-6, XV Fox, 14:21:38-14:21:40; ECF No. 25-2, PageID.555-56.) At the time of the collision, Simpson was in a full sprint and suddenly shifted direction away from Belloli's vehicle when his body went to the ground. (ECF No. 20-6, XV Fox, 14:21:33-14:21:40.) In "the light depicted by the videotape," Simpson's running presented "tense, uncertain, and rapidly evolving circumstances." *Pennington*, 644 Fed. App'x at 538;

---

[1] Once a seizure is proven, intent is not relevant. The inquiry is whether the seizure was "objectively reasonable in light of the facts and circumstances confronting [the police officer]." *Graham v. Connor*, 490 U.S. at 397 (citations removed). In making its determination, the court must consider what "a reasonable officer on the scene [would do] making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir. 2013) (quoting *Graham*, 490 U.S. at 396-97).

*Graham*, 490 U.S. at 396-97. Simpson reacted to an oncoming police vehicle, which he was attempting to evade, tried to stop (possibly to pivot and run again in another direction), and, unfortunately for him, lost traction in his socks. (ECF No. 20-6, XV Fox, 14:21:33-14:21:40.) Simpson fell unexpectedly and awkwardly, projecting his arm and leg in front of Belloli's front wheel at the last instant.[2] (*Id.*)

This video account is consistent with Officer Fox's observations of the event. (ECF No. 20-2, PageID.163.) Fox was following immediately behind Simpson and had the clearest view of what transpired. (*Id.*) It also conforms to the descriptions Simpson himself gave when he filed an insurance application with the City of Dearborn. (ECF No. 20-10, PageID.225.)

For Belloli's part, the video evidence does not demonstrate an intentional collision with Simpson. Consistent with his testimony, both Fox's bodycam and a dashcam placed on Belloli's vehicle show Belloli's vehicle taking a path that would cut off or "box in" a fleeing suspect who was suspected of committing a violent assault. (ECF No. 20-5, PageID.182; ECF No. 20-6, XV Fox, 14:21:33-14:21:40; ECF No. 20-6, Car 09, 14:21:43-14:21:47.) Unexpectedly, and at the last split second, Simpson fell under Belloli's wheel. (ECF No. 20-6, XV Fox, 14:21:33-14:21:40; ECF No. 20-6, Car 09, 14:21:45.) Belloli had no time to react and to avoid hitting Simpson.

Simpson argues that because "[he] maintains that Defendant Belloli intentionally ran over him . . . in order to stop Simpson from fleeing," there is a "material factual dispute [and the court] cannot reach the underlying issue." (ECF No. 25, PageID.412.)

---

[2] As discussed below, it is ultimately immaterial why Simpson fell to the ground. The relevant question is Belloli's intent to hit Simpson with a vehicle. *Brendlin*, 551 U.S. at 254; *Brower*, 489 U.S. at 596-97.

8

Simpson's logic is flatly contradicted by the law. It does not matter whether Simpson argues, or "maintains," any statement of fact. Here, there is unambiguous video evidence. Summary judgment analysis entitles Simpson only to "reasonable" inferences from facts, not deference to mere allegations. *Marvin v. City of Taylor*, 509 F.3d 234, 239 (6th Cir. 2007). Simpson cannot simply rely on assertions in a brief or deposition testimony to create a triable issue of fact when such statements are in direct conflict with a video record of the incident. *Shreve*, 743 F.3d at 132-33.

To the extent that Simpson's arguments reference the video at all, they are not enough to survive summary judgment. First, Simpson contests the finding that he slipped and instead argues that "he was in the process of stopping and dropping down to the ground." (ECF No. 25, PageID.397.) This conclusion is contradicted by Fox's bodycam video, which shows Simpson running in socks, losing his balance, and falling backwards. (ECF No. 20-6, XV Fox, 14:21:33-14:21:40.) It also contradicts the statements by Officer Fox and Simpson himself when, before beginning this litigation, he admitted to slipping and falling. (ECF No. 20-2, PageID.163; ECF No. 20-10, PageID.225.)

However, even if the court credits Simpson's most recent account and assumes his intent was to fall to the ground, the outcome does not change. The evidence does not call Belloli's testimony into question. Both Fox's bodycam and Belloli's dashcam still show Belloli's vehicle being driven ahead of Simpson. (ECF No. 20-6, XV Fox, 14:21:33-14:21:40; ECF No. 20-6, Car 09, 14:21:33-14:21:47.) They do not show Belloli driving toward Simpson in a manner as to intentionally hit Simpson. (*Id.*) Belolli's dashcam shows that, before hitting Simpson and while Simpson is still in sight, Belloli

9

moves the vehicle slightly to the left and away from Simpson. (*Id.*, Car 09, 14:21:44-14:21:45.) Simpson then, in a split second, drops out of sight and Belloli moves the vehicle slightly to the right. (*Id.*, 14:21:45-14:21:47.) Fox's bodycam confirms that Simpson awkwardly went to the ground in the instant before Belloli's wheel ran over Simpson's arm. (*Id.*, XV Fox, 14:21:38-14:21:39.)

This video evidence is exactly in line with Belloli's testimony. (ECF No. 20-5, PageID.182.) Belloli was attempting to corral Simpson and block Simpson's means of escape. Belloli moved the vehicle slightly away from Simpson when Simpson appears close to the vehicle and then moved the vehicle slightly back to the right, circling around Simpson at the moment when Simpson was no longer visible. (ECF No. 20-6, Car 09, 14:21:33-14:21:47.) It is not reasonable to infer that an officer is even physically capable of acting to hit a fleeing suspect intentionally when that officer is driving ahead of a suspect, the suspect suddenly goes to the ground, and in that instant, the suspect projects his arm into the vehicle's path. *Moran*, 788 F.3d at 204. Also important is that the officer driving the car lacks any vision of what the suspect is doing after the suspect drops down. *Id.* This is even more true considering the prototypically "tense, uncertain, and rapidly evolving circumstances" of a dangerous chase to which the officer in this case, Belloli, was reacting. *Burgess*, 735 F.3d at 473 (quoting *Graham*, 490 U.S. at 396-97). Simpson presents no substantive evidence, nor any reasonable inferences, to the contrary. *Marvin*, 509 F.3d at 239.

Second, Simpson claims that Belloli had a clear view of Simpson in the moments leading up to the collision. (ECF No. 25, PageID.415.) Simpson does not contest the fact that Belloli lost sight of Simpson when Simpson fell. Belloli's view leading up to

10

Simpson's fall is irrelevant when Belloli admits to attempting to block Simpson's route of escape. (ECF No. 20-5, PageID.182.) The fact that Belloli could see Simpson proves nothing about Belloli's intent.

Third, Simpson claims video evidence shows Belloli steering the vehicle into Simpson. (ECF No. 25, PageID.415.) Belloli's dashcam does show Belloli moving his vehicle slightly to the right and toward the direction of Simpson, but only after Simpson had fallen to the ground and out of Belloli's line of sight. (ECF No. 20-6, Car 09, 14:21:46-14:21:47.) Further, that slight move, which had no significant impact on the overall trajectory of the vehicle, occurred only after Belloli had moved his vehicle slightly to the left and away from Simpson. (*Id.*, 14:21:44-14:21:46.) Belloli's leftward steer occurred while Belloli could still see Simpson and recognize how close Simpson was to the vehicle. (*Id.*) Although Belloli drove very close to Simpson, Fox's and Belloli's videos in conjunction unambiguously show Simpson, in a mere moment, dropping under Belloli's wheel. *Shreve*, 743 F.3d at 132-33. (ECF No. 20-6, XV Fox, 14:21:33-14:21:40; ECF No. 20-6, Car 09, 14:21:33-14:21:47.) The videos do not show Belloli intentionally directing his vehicle to hit Simpson. (*Id.*) No reasonable juror could find otherwise. *Anderson*, 477 U.S. at 248.

This decision follows the reasoning of other courts throughout the Sixth Circuit. They too have rejected an excessive force claim when a police officer lacks the intent to "seize" a fleeing suspect by accidently hitting him with a police vehicle. In a case with strikingly similar facts, *Kelley v. City of Southfield*, No. 06-13189, 2007 WL 1343265 (E.D. Mich. May 7, 2007), a suspect attempted to evade the police on foot and ran toward a major highway. *Id.* at *1. The trailing police officer attempted to cut off the

suspect by driving his vehicle in a position to prevent the suspect's means of escape and to prevent a potentially deadly chase on a major thoroughfare. *Id.* However, when the patrol car approached, the suspect "appeared to change direction, then lost his footing and was run over by the patrol car." *Id.* There, like here, the officer testified to not intending to stop the suspect by hitting him with the vehicle, but instead wishing to block his means of escape. *Id.* at *3. The court reasoned that because the suspect-plaintiff had not presented any evidence to the contrary, there was no intentional "seizure" under the Fourth Amendment and thus no constitutional violation. *Id.* Here, Simpson has not presented evidence to contradict the unambiguous video evidence that Belloli intended to impede Simpson's route of escape, not to run him down.

In *Williams v. Bowling*, No. 1:07-cv-146, 2008 WL 4397426 (S.D. Ohio Sep. 26, 2008), a suspect was engaged in a high-speed vehicle chase. The suspect drove his car into a railroad junction box and attempted to flee on foot. *Id.* at *1. The pursuing officer attempted to drive around the suspect's crashed car and follow the suspect but hit him in the process. *Id.* The court found that "although [the suspect] was struck by the cruiser . . . in the context of the rapidly unfolding events . . . this is not evidence that [the officer] intended to apprehend [the suspect] by striking him." *Id.* *8. The court concluded that the officer's actions might constitute negligence, but "negligence alone is not a 'seizure' for Fourth Amendment purposes." *Id.* (citation removed). In this case, Simpson was also engaged in an intense police chase. No evidence indicates that Belloli attempted to end it by hitting Simpson with his vehicle. Although possibly negligent, Belloli's conduct does not rise to the level of an intentional "seizure."

Likewise, in *Lewis v. City of Toledo*, No. 3:10CV2549, 2012 WL 112529 (N.D. Ohio Jan. 12, 2012), an officer was pursuing a suspect who was fleeing on foot. *Id.* at *1. The suspect turned from a street into a parking lot and the officer followed in her vehicle. *Id.* The officer then hit the suspect with her vehicle. *Id.* The court reasoned that the officers on the scene were attempting "to capture [the suspect] by corralling him, or boxing him in." *Id.* at *3. The officer did not see that her vehicle was going to hit the suspect and testified to lacking intent. *Id.* at *3. The court concluded that the suspect-plaintiff failed "to prove the officer intended to seize him by striking him with the vehicle." *Id.* at *2-3. In this case, Belloli similarly could not see in the last split second when Simpson fell that his police vehicle was going to hit Simpson's arm, extended at that moment under the front wheel.

Finally, in *Swift v. McNatt*, No. 15-1009, 2015 WL 9165967 (W.D. Tenn. Dec. 16, 2015), a suspect was fleeing the police on foot, followed by several police vehicles. *Id.* at *1. The suspect cut into an empty lot off the side of a street and was hit by one of the police vehicles. *Id.* The court noted that "there [was] no evidence to suggest that Defendant intentionally intended to physically stop [the suspect] by hitting him with his car." *Id.* at *4. In "the context of the rapidly unfolding events" of the chase and the officer's intent to "cut off [the suspect's] escape route," the court found that the officer had not committed a "seizure" by striking the suspect-plaintiff with the officer's vehicle. *Id.* Here, in the context of Simpson's rapid and disorganized escape attempt, there is no evidence a reasonable juror could use to find that Belloli intended to detain Simpson by running him over with his police vehicle. *Anderson*, 477 U.S. at 248.

Given that Simpson has not presented a valid claim under § 1983, the court need not analyze the nuances of Defendants' defense of qualified immunity. It is noted, however, that police officers acting in the course of their official duties are entitled to immunity if they have not violated a constitutional right that was "clearly established." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (citing *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015)); *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019). Although immunity would be appropriate here because Belloli did not violate Simpson's constitutional rights, the court need not address whether any constitutional right was "clearly established."

The court also need not consider whether any force used by Belloli was "unreasonable" and thus excessive. *Burgess v. Fischer*, 735 F.3d 462, 472-73 (6th Cir. 2013) (quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 958 (6th Cir. 2013)) ("Under the Fourth Amendment, we apply an objective reasonableness test . . . . In doing so, three factors guide our analysis: '(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.'") Belloli did not intentionally "seize" Simpson by hitting him with a vehicle. Therefore, a "reasonableness" analysis is unnecessary. *Slusher v. Carson*, 540 F.3d 449, 454 (6th Cir. 2008) (quoting *Graham*, 490 U.S. at 395 n.10) ("[A] 'seizure' trigger[s] the Fourth Amendment's protections."); *Rodriguez v. Passinault*, 637 F.3d 675, 680 (6th Cir. 2011) ("A claim for excessive force under the Fourth Amendment requires that a plaintiff demonstrate that a seizure occurred.").

## B. State Claims

Although the video evidence does not provide a valid basis for asserting a Fourth Amendment violation under § 1983, there may be a claim sounding in negligence. Belloli did attempt to cut Simpson off by driving his vehicle quickly and in very close proximity to Simpson. (ECF No. 20-6, XV Fox, 14:21:33-14:21:40; ECF No. 20-6, Car 09, 14:21:33-14:21:47.) It may have been difficult for Belloli to stop and react to Simpson's fall. It also may be arguable that Belloli should have considered the possibility Simpson would fall, especially considering Simpson's shifts of direction and his lack of shoes. (ECF No. 20-2, PageID.163-65, 167; ECF No. 20-5, PageID.188-89; ECF No. 20-6, XV Fox, 14:21:33-14:21:40; ECF No. 25-2, PageID.545-46, 555-56.)

However, the court will not rule on these issues. Simpson's negligence claims are based in Michigan state law, Mich. Comp. Laws § 691.1405 and § 691.1407(2)(c). Since Simpson's federal claim has been dismissed, the court could hear the remaining claims only under supplemental jurisdiction. (*See* ECF No. 1, PageID.2 ("The court has supplemental jurisdiction of the Michigan state claims.").)

The court may decline supplemental jurisdiction when "[it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[T]he doctrine of pendant jurisdiction thus is a doctrine of flexibility, designed to allow courts to deal with cases involving pendant claims in a manner that most sensibly accommodates a range of concerns and values."). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

Considering "several factors, including 'values of judicial economy, convenience, fairness, and comity,'" this court will exercise its discretion in declining jurisdiction. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon*, 484 U.S. at 350). The court will give Michigan state courts the opportunity to hear and adjudicate Simpson's claims under their laws. Those claims are complex and debatable and are best suited for courts with specific expertise in state law. It will also not risk duplicity of litigation given that no remaining claims can be litigated in federal court. Lastly, although potentially inconvenient, dismissal without prejudice would not inflict any fundamental unfairness on either party. *E.g.*, *Puetz v. Spectrum Health Hosps.*, 919 N.W.2d 439, 448 (Mich. Ct. App. 2018) (allowing statutes of limitation to be tolled while state claims are litigated in federal court); *see also Roberts v. City of Troy*, 429 N.W.2d 206, 213 (Mich. Ct. App. 1988).

## IV. CONCLUSION

The record, including uncontested video evidence, does not present a triable issue of fact regarding Simpson's § 1983 excessive force claim. *Pennington*, 644 Fed. App'x at 538. No reasonable juror could find that Belloli intentionally "seized" Simpson by running over Simpson's arm with a police vehicle. *Anderson*, 477 U.S. at 248. The remainder of Simpson's claims are based on state law and will be dismissed without prejudice on jurisdictional grounds. Accordingly,

IT IS ORDERED that Defendants City of Dearborn and Officer Vincent Belloli's Motion for Summary Judgment (ECF No. 20) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff Joshua Simpson's excessive force claim under 42 U.S.C. § 1983 (Count III) is DISMISSED WITH PREJUDICE. Simpson's

16

negligent operation of government owned vehicle claim under Mich. Comp. Laws § 691.1405 (Count I) and Simpson's gross negligence claim under Mich. Comp. Laws § 691.1407 (Count II) are DISMISSED WITHOUT PREJUDICE.

                    s/Robert H. Cleland    /
                    ROBERT H. CLELAND
                    UNITED STATES DISTRICT JUDGE

Dated: December 3, 2019

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 3, 2019, by electronic and/or ordinary mail.

                    s/Lisa Wagner    /
                    Case Manager and Deputy Clerk
                    (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\18-13156.SIMPSON.MotionforSummaryJudgment.RMK2.docx